United States Court of Appeals
Fifth Circuit

**F I L E D**

July 29, 2004

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-20241
_____

AMERICAN HOME ASSURANCE COMPANY,

Plaintiff,

AMERICAN HOME ASSURANCE COMPANY,

Plaintiff-Counter
Defendant-Appellant,

versus

UNITED SPACE ALLIANCE, LLC,

Defendant-Counter
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
_____

Before BENAVIDES, STEWART, and DENNIS Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellant-Plaintiff-Counter Defendant, American Home Assurance Company ("AHAC"),

appeals the district court's denial of its motion for summary judgment which sought a declaratory

judgment. Specifically, AHAC contends that it does not have a duty to defend Appellee-Defendant

Counter Claimant, United Space Alliance, LLC ("United Space") under the terms of a general liability

insurance policy (the "Policy") against a third-party lawsuit. AHAC also appeals the district court's

*sua sponte* grant of summary judgment for United Space which found that AHAC does have a duty

to defend. Additionally, AHAC appeals the district court's denial of its motions for judgment as a

matter of law which sought reversal of a jury verdict which: (1) found that AHAC had breached its duty to defend United Space against the third-party lawsuit; (2) awarded United Space the amount of attorney's fees spent and expects to spend in the defense of that lawsuit; and (3) awarded attorney's fees spent and expected to be spent on the action involving whether AHAC has a duty to defend, and breached that duty, under the Policy. For the reasons enunciated below, we affirm in part, reverse in part, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves an underlying third-party lawsuit (the "Hi-Shear suit") arising out of a contract dispute between Hi-Shear Technology Corporation ("Hi-Shear") and United Space. USBI Company ("USBI") and then subsequently United Space, were general contractor's for the National Aeronautics and Space Administration's ("NASA") space shuttle program. Hi-Shear is a NASA subcontractor that supplied separation bolts used to detach the shuttle's solid rocket boosters from the shuttle after launch. In 1997, Hi-Shear and USBI entered into a contract under which Hi-Shear would provide delay cutter assemblies that are used to deploy the parachutes on the solid rocket boosters. United Space assumed this contract from USBI in late 1999. Hi-Shear alleges that after entering into the contract, USBI materially altered its scope by adding work that Hi-Shear was to perform. Hi-Shear performed this additional work, but its payment requests were refused.

In its suit against USBI and United Space, Hi-Shear set forth, *inter alia*, causes of action relating to USBI's and United Space's alleged breach of contract or fraudulent inducement. United Space had previously purchased the Policy from AHAC as well as umbrella and miscellaneous professional liability policies from the National Union Fire Insurance Company of Pittsburgh

2

("NUFIC").[1]  United Space's requests to AHAC and NUFIC to be defended and indemnified under the policies were refused.  AHAC's and NUFIC's motions for summary judgment seeking a declaration that they did not owe a duty to defend were denied by the district court.  Instead, the district court, *sua sponte,* granted summary judgment to United Space holding that AHAC and NUFIC had a duty to defend against the Hi-Shear action under their respective policies.  The district court also held that the issue as to whether AHAC or NUFIC had breached their duty was to be determined by a jury.  Finally, the district court held that United Space could recover attorney's fees from both companies for defending the Hi-Shear suit, as well as for prosecuting counterclaims against both.  At trial, the jury found that AHAC breached the Policy and awarded United Space the following: (a) $307,071 for the amount paid defending against the Hi-Shear suit (less a $500,000 self-insured retention); (b) $760,000 for future costs to complete the defense of the Hi-Shear suit; (c) $762,554 for attorney's fees expended in the instant coverage action against AHAC; and (d) $200,000 for attorney's fees through completion of the instant coverage action.  The jury found that NUFIC was not liable to United Space.  During trial the district court denied AHAC's judgment as a matter of law motions which sought, *inter alia*, set aside of the jury's verdict.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court.  American International Specialty Lines Insur. Co., 352 F.3d 254, 260 (5th Cir. 2003).  We also review a district court's interpretation of an insurance policy *de novo*. Id. (citing Potomac Ins. Co. of Ill. v. Jayhawk Med. Acceptance Corp., 198 F.3d 548, 550 (5th Cir. 2000)).  A summary judgment motion is properly granted only when, viewing the evidence in

---

[1] The AHAC Policy had a coverage period of June 1, 1996 through October 1, 2001.

3

the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Id. (citing Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The *sua sponte* nature of a district court's summary judgment does not alter this court's standard of review. Harken Exploration Co. v. Sphere Drake Ins. P.L.C., 261 F.3d 466, 477 (5th Cir. 2001). Rather, Fed. R. Civ. P. 56 requires the prompt disposition of cases in the absence of any genuine issues of material fact for the court to consider. Exxon Corp. v. St. Paul Fire and Marine Ins. Co., 129 F.3d 781, 786 (5th Cir. 1997). Rule 56 requires a court, under the proper conditions, to grant relief to that party which is entitled to such even if it has not been demanded. Id.

Furthermore, a court of appeals reviews a district court's denial of a motion for judgment as a matter of law *de novo* by reapplying the same standard used by the district court. Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998); Wayne v. Village of Sebring, 36 F.3d 517, 525 (6th Cir. 1994). We can reverse a denial of a motion for JMOL only if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings. Id. Additionally, this court's standard for reviewing a jury verdict is whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Liberty Mut. Ins. Co. v. Falgoust, 386 F.2d 248, 253 (5th Cir. 1967). A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict. Id.

4

## DISCUSSION

I.        "Personal Injury" coverage[2]

We find that the district court was correct to apply the "eight corners rule," and in determining that AHAC has a duty to defend United Space under the Policy. Am. States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir. 1998) (quoting National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) ("In determining an insurer's duty to defend,

---

[2] The provision at issue here, "Personal Injury," Section I, Coverage Part B, provides in pertinent part:

1.  Insuring Agreement
                    ***
        (b) This insurance policy applies to:

                (1) "Personal Injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.
                    ***
but only if the offense was committed in the "coverage territory" during the policy period.
                    ***
Section V provides the definition of "personal injury" and lists specific offenses that are covered:

13.      "Personal Injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:
                    ***
        (b)  Malicious prosecution;
                    ***
        (d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

        (e) Oral or written publication of material that violates a person's right to privacy.

5

Texas courts utilize the eight corners rule."). The eight corners rule provides that an insurer's duty to defend is determined by the language of the insurance policy and a "liberal" interpretation of the allegations against the insured, that if true, potentially state a cause of action covered by the policy. Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997); Am. Guar. & Liab. Ins. Co. v. Shel-Ray Underwriters, Inc., 844 F. Supp. 325, 329 (S.D. Tex. 1993). In determining coverage Texas state courts focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged. Adamo v. State Farm Lloyds Co., 853 S.W.2d 673, 676 (Tex. App. - Houston [14th Dist.] 1993, writ denied). An insured bears the initial burden of showing that there is coverage. Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998). United Space satisfied its burden because the alleged facts giving rise to Hi-Shear's causes of action include conduct that potentially falls within the enumerated offenses in that policy.[3]

We are not persuaded by AHAC's argument that a potential cause of action covered under the Policy does not exist because any alleged disparagement of Hi-Shear by United Space occurred only after the alleged breach of contract and fraudulent inducement, and thus were not within the coverage period. Hi-Shear filed its complaint against United Space on November 9, 2000. Its complaint includes allegations of conduct by United Space both before and after the May 17, 2000 termination of the contract, as well as prior to October 1, 2001, the date the Policy coverage expired. Thus, the potential stated causes of action against United Space are covered under the Policy period, and United Space has satisfied the requirements of the eight corners rule.

II.     Policy Exclusions

---

[3] The Hi-Shear suit contains factual allegations tending to show that United Space disparaged Hi-Shear's technical quality, reputation, and viability. Injuries arising out of the disparagement of an organization's goods, products, or services is a covered offense under the Personal Injury provisions of the Policy as listed in note 2.

We also find the district court was correct to hold that the policy exclusions,[4] such as the "knowing falsity exclusion," listed in the Policy did not preclude AHAC's duty to defend because some of the Hi-Shear allegations against United Space fell outside of the listed policy exclusions. An insurer must defend when there is at least one cause of action within the policy coverage, Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co., 832 F.2d 1358, 1367 (5th Cir. 1987), and "once coverage has been found for any portion of a suit, an insurer must defend the entire suit." Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex. App. - Austin 2000).

Here, some of the causes of action and allegations of conduct, such as breach and repudiation of contracts, as well as disparagement, are not types based on and do not involve knowingly fraudulent statements. Furthermore, Texas courts have held that even where allegations involve false statements, if liability can be imposed without proving that the false statements were made with the knowledge that they were false, the "knowledge of falsity" exclusion will not apply to preclude coverage. See e.g., Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co., 61 F. Supp. 2d 611, 619 (S.D. Tex. 1999) (stating that because "knowledge [was] not a requirement for a finding of liability in the [third-party]," the insurer had not carried its burden of showing that the knowledge of falsity

---

[4] Exclusions of the GL policy:

This insurance policy does not apply to:

(a) "Personal Injury" or "advertising injury;"

(1) arising out of oral or written publication of material, if done by or at the direction of the insured with the knowledge of its falsity;

(2) arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

7

exclusion bars [defense] coverage").[5]

III.    District court's denial of judgement as matter of law/jury verdict

The district court correctly denied AHAC's motion seeking reversal of the jury verdict which found that AHAC breached its duty to defend United Space in the Hi-Shear suit. As noted above, this court cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings. Here, the jury had before it the following facts in concluding that AHAC breached its duty to defend:

- The insurance policy itself which provides that AHAC has the duty to defend United Space in specific circumstances;

- Undisputed evidence that even after United Space proved to AHAC that the self-insured retention had been exhausted, no defense costs were paid.;[6]

- The absence in the policy of the requirement of a formal request for defense, to trigger the duty to defend. The only duty required on United Space's part was a duty to notify AHAC of any "occurrence" of an offense as soon as practicable which may result in a claim. United Space notified AHAC of the Hi-Shear suit with a letter on November 12, 2000, three days after the suit had been filed;

- The documentation submitted to verify that the self-insured retention had been exhausted in the form of: (i) invoices showing the amount that was being charged on a monthly basis; (ii) United Space's internal processing forms that showed someone had reviewed the bill,

[5] United Space correctly notes that under the Florida law, the law applicable to the Hi-Shear suit, a plaintiff may recover for disparagement without ever proving that the defendant had knowledge of the falsity of the publication. (citing Bothmann v. Harrington, 458 So. 2d 1163, 1168 (Fla. Dist. Ct. App., 3rd Dist. 1984)).

[6] AHAC's corporate designee Olivia D'Ann Gentemann ("Gentemann") testified that she received in March 2002, a copy of the district court's order declaring that AHAC had a duty to defend United Space, that she received documentation by the summer of 2002 showing the United Space had spent between $600,000 and $700,000 of defense expenses in connection with the Hi-Shear action, and that despite this proof that the $500,000 self-insured retention had been exhausted, AHAC had not "paid any money to United Space."

8

signed off and authorized it for payment as a defense cost in the Hi-Shear action; and (iii) copies all the cancelled checks paid to the law firm.[7]

Furthermore, the jury properly did not factor into its deliberations a tender rejected by United Space because AHAC chose, of its own volition, not to present this offer before the jury.[8]  This court has clearly stated that in reviewing a jury verdict, the question to ask is "whether the jury finding could, with reason, be made upon the evidence before it."  Liberty Mut. Ins. Co., 386 F.2d at 253.  Thus, this rejected tender cannot be considered by us in reviewing the jury's verdict here.  In looking at the evidence that the jury had before it, we find that the jury verdict was reasonably based on "substantial evidence" and should be affirmed.

IV.    Judgment as a matter of law /jury award/damages

AHAC filed a judgment as a matter of law motion seeking reversal of the jury's award of attorney's fees to United Space, for both the Hi-Shear defense and the instant coverage action.  The district court denied this motion.  AHAC asserts that there was a lack of evidence demonstrating that the awarded fees were reasonable and necessary, and thus the district court should have granted its

---

[7] Gettemann testified that she had requested "itemized" bills from United Space's attorneys because she felt that the documentation that was provided was insufficient.  United Space correctly notes that attorney bills are privileged under Florida law where the Hi-Shear suit is located, and because AHAC has denied coverage and remains an adverse party to United Space, it does not share the privilege.  (citing Progressive v. Lanier, 800 So.2d 689, 690 (Fla. App. 2001); Old Holdings, Ltd v. Taplin, 584 So.2d 1128 (Fla. Dist. Ct. App. 4th Dist. 1991)).  However, these cases also reveal that a trial court should review those documents for which a privilege is being asserted, rather than issuing a blanket privilege, or blanket denial of such privilege.  Because, as we explain below, we find that United Space must proffer evidence that the attorney's fees it seeks as damages in the Hi-Shear action were reasonable and necessary, we will leave it to the district court, on remand, to determine what documents are actually entitled to the attorney-client privilege.

[8] AHAC's decision not to present the "tender" offer into evidence at trial was the result of United Space's objection that such would violate Federal Rule of Civil Procedure 408 that prohibits entering statements made in compromise negotiations.  The district court overruled the objection, but cautioned AHAC that if it allowed Ms. Getemann to testify as to such, it would be opening the door to United Space presenting rebuttal evidence.  It was at that point AHAC decided not to present the "tender" and abandoned its planned direct questioning of Getemann as to the tender.

motion. AHAC also argues that the fees requested by United Space as damages and for the coverage action were not properly segregated. The attorney's fees awarded by the jury were both as damages for AHAC's breach of duty to defend United Space in the Hi-Shear action, and as attorney fees due a successful claimant in a breach of contract action. Therefore, we will analyze them separately to determine if the district court erred. We will also analyze the segregation of fees issue separately to ascertain if the district court committed any error in that regard.

A. Attorney's fees as damages

AHAC notes that while United Space offered the testimony of its chief counsel in the Hi-Shear action, Michael Levin ("Levin"), it did not designate him as an expert, nor did it offer a designated expert to testify about the reasonableness and necessity of the attorney's fees. Testimony and documentary evidence as to reasonableness and necessity were precluded by the district court after it had granted United Space's pre-trial motion in limine to prevent AHAC from raising such issue. Essentially, the evidence presented by United Space was proof of how much it had paid Levin's law firm in defending United Space against the Hi-Shear suit.

Texas courts have held that attorney's fees incurred involving litigation with a third party are recoverable as actual damages. See e.g., United States Casualty Co. v. Schlein, 338 F.2d 169, 175 (5th Cir. 1964); Southwestern Indemnity Co. v. National Surety Corp., 277 F.2d 545, 549 (5th Cir. 1960); Turner v. Turner, 385 S.W.2d 230, 234 (Tex. 1964); Lesikar v. Rappeport, 33 S.W.3d 282, 306 (Tex. App. - Texarkana 2000, pet. denied). These courts have stated that the recovery of attorney's fees in such circumstances are appropriately based upon the equitable ground that the claimant was required to defend against litigation as a consequence of the wrongful conduct of the defendant. See United States Casualty Co., 338 F.2d at 175; Powell v. Narried, 463 S.W.2d 43,

10

46 (Tex. Civ. App. - El Paso 1979, writ ref'd n.r.e.); Lesikar, 33 S.W.3d at 306; Nationwide Mut. Ins. Co., 842 S.W.2d at 340-41. However, these courts have also held that attorney's fees sought to be recovered as damages must be reasonable and necessary. Southwestern Indemnity Co., 277 F.2d at 549; Powell v. Narried, 463 S.W.2d at 46; Lesikar, 33 S.W.3d at 306. To show the reasonableness and necessity of attorney's fees incurred, Texas courts have generally held that a party seeking such fees must offer the testimony of a witness who has been designated as an expert, See E.F. Hutton & Co. v. Youngblood, 741 S.W.2d 363, 364 (Tex. 1987); Lesikar, 33 S.W.3d at 307, or at the very least, some testimony by the claimant's attorney that the fees being sought as damages are reasonable. Gulf Paving Co. v. Lofstedt, 188 S.W.2d 155, 161 (1945); Nguyen Ngoc Giao v. Smith & Lamm, P.C., 714 S.W.2d 144, 149 (Tex. App.-Houston [1st Dist.] 1986 , no writ). Furthermore, Texas courts have held that a court may take judicial notice of the reasonableness of attorney's fees based on the testimony given. See Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990); Lesikar, 33 S.W.3d at 307. However, these courts have also held that when a court does not clearly take judicial notice of reasonableness, and the testimony offered as to reasonableness and necessity is that of an interested witness, even if uncontradicted, such testimony does no more than raise a fact issue to be determined by the jury. Id.

Levin testified as to how his firm had to develop sufficient technical knowledge of the Space Shuttle program, interview dozens of persons who worked in the program, as well as review thousands of pages of documents. However, in keeping with the motion in limine, the district judge narrowed the scope of Levin's testimony to cover only an overview of what was done in the Hi-Shear defense and cautioned Levin to avoid discussing issues of reasonableness and necessity. Furthermore, while United Space submitted the bills from its attorneys for the legal fees it incurred

in the Hi-Shear defense, it did not submit the backup documentation for those bills which detailed the attorneys whose work was being billed, the type of legal work that they had performed, and the number of hours being billed. United Space claimed that such was covered under the attorney-client privilege. In sum, because the motion in limine prevented either party from even discussing the reasonableness and necessity of the attorney's fees, there was no evidence presented as to such. While United Space argues that section 38.003 provides a presumption of reasonableness for requested attorney's fees, as we explain below, that section only applies to attorney's fees sought as costs incurred in bringing a successful claim for breach of contract. It does not apply to the damages that a successful breach of contract claimant recovers, even if such are attorney's fees. Here, the jury did not have before it any evidence that the attorney's fees incurred by United Space in the Hi-Shear action were reasonable and necessary. It only had before it proof of the internal approval process involved in authorizing the payment of the attorney's fees, and the amount of fees that had actually been paid. Because there was no evidence of reasonableness and necessity offered, there was no evidence to support a finding by the jury that such fees were reasonable and necessary, as is required. Furthermore, there is no indication from the record that the district court took judicial notice of the reasonableness and necessity of the awarded attorney's fees, and we thus conclude that no such judicial notice was taken. Therefore, we find that the district court erred in denying AHAC's judgment as a matter of law motion seeking reversal of the jury's award of attorney's fees as damages, and remand for a proper determination as to the reasonableness and necessity of those fees. We are confident that on remand the district court will apply the factors that have been set forth by

the Texas Supreme Court,[9] in addition to requiring that United Space either offer the testimony of a designated expert, or testimony by its attorneys, as to why the attorney's fees requested are reasonable and necessary.

B.     Attorney's fees for coverage action

The jury also awarded United Space attorney's fees for the instant coverage action against AHAC.  United Space correctly notes that section 38.001 provides for a mandatory award of attorney's fees for successful claimants in a breach of contract action.  Kona Technology Corp. v. Southern Pacific Transport Co., 225 F.3d 595, 614 (5th Cir. 2000) (citing World Help v. Leisure Lifestyles, 977 S.W.2d 662, 683 (Tex. App.-Fortworth, 1998); Atlantic Richfield Co. v. Long Trusts, 860 S.W.2d 439, 449 (Tex. App.-Texarkana 1993, writ denied)).  While United Space did not invoke section 38.001 at trial, such is not required in order for a successful breach of contract claimant to be entitled to an award of attorney's fees under that section. See Enserch Corp. v. Shand Morahan & Co., Inc., 952 F.2d 1485, 1500-01 (5th Cir. 1992) (en banc) (Where an insured party has clearly presented a claim for attorney's fees, or clearly put the insurer on notice that it would seek attorney's fees, the fact that the insured party failed to mention § 38.001 will not preclude the applicability of that section in the award of attorney's fees).

AHAC also cites this court's decisions in Utica Lloyds of Texas v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998) and Travelers Indem. Co. v. Citgo Petroleum Corp., 166 F.3d 761, 772 (5th Cir.

---

[9] These factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer or firm; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyers or lawyers performing the services; and (8) whether the fees are fixed or contingent on results obtained.  See  Kona Technology Corp. v. Southern Pacific Transport Co., 225 F.3d 595, 614, n. 7 (5th Cir. 2000) (citing Arthur Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997)).

13

1999) to argue that United Space is precluded from attorney's fees because it pled attorney's fees under the Texas Declaratory Judgment Act (the "Texas Act"), Tex. Civ. Prac. & Rem. Code, section 37.009 ("section 37.009"). AHAC asserts that these cases held that the Texas Act could not be the basis for recovery of such fees in a diversity action. The holdings of these two cases do not support AHAC's argument. In Utica Lloyds this court denied an insured's request for attorney's fees, not because it had pled section 37.009 instead of section 38.001, but because the court held that even if section 38.001 had been pled, the insurance company was exempted under section 38.006 from paying attorney's fees. 138 F.3d at 210. Also, Travelers Indem. Co. is inapplicable because in that case the party seeking attorney's fees did so through a declaratory judgment action, 166 F.3d at 772, while, by contrast, United Space's award of attorney's fees was placed before a jury. Furthermore, the Texas Supreme Court in Grapevine Excavation, Inc. v. Maryland Lloyd's held that section 38.006 does not preclude the award of attorney's fees unless there is another statute available other than section 38.001 in which an insured could recover attorney's fees from an insurer. 35 S.W.3d 1, 5 (Tex. 2000) (Insurance company, which was successfully sued by an insured for refusing to defend a third-party suit under the terms of a general liability policy, was not entitled to a section 38.006 exemption to pay attorney's fees under section 38.001). Here, as in Grapevine Excavation, no other statutes exist under which attorney's fees would be available to an insured who successfully sues its insurer for breach of a general liability policy other than section 38.001.

While section 38.003 does provide a rebuttable presumption that the fees requested are reasonable, it also states that the presumption is for those fees which are "usual and customary." Tex. Civ. Prac. & Rem. Code Ann. § 38.003. Thus, there is a question as to whether a successful claimant seeking attorney's fees under section 38.001 has some burden to show that the fees it is seeking are

14

"usual and customary" in order to be entitled to the benefit of the presumption, and if so, what such a party must proffer as evidence to meet that burden.

A review of Texas cases dealing with attorney's fees awarded pursuant to section 38.001 reveals the existence of a minimal threshold that a claimant must clear before being entitled to the reasonableness presumption pursuant to section 38.003. See e.g., Lesikar, 33 S.W.3d at 307 (Section 38.003 requires some showing that the fees were usual and customary); Murrco Agency, Inc. v. Ryan, 800 S.W.2d 600, (App. 5 Dist. 1987) (Factors to be considered include total amounts of money involved in the case, nature of the case, time spent, and skill and expertise required); Leggett v. Brinson, 817 S.W. 2d 154, (App. 8 Dist. 1991) (Appellate court's determination as to whether awarded attorney's fees were excessive requires looking at the testimony, record, amount in controversy and the appellate judges' own experience as lawyers and judges); Security State Bank v. Valley Wide Elec. Supply Co., Inc., 752 S.W.2d 661, writ denied (App. 13 Dist. 1988) (Evidence proffered by successful conversion action claimant that attorney co-counsel spent 146 ½ hours on the case and charged a fee of $100 per hour sufficient to show that fees where usual and customary); Stewart Title Guar. Co. v. Aiello, 911 S.W. 2d 463, reh'g overruled, writ granted, motion overruled, aff'd in part, rev'd in part, 941 S.W. 2d 68 (App. 8 Dist. 1995) (Trial attorney's testimony about paralegal's duties in directing pleadings and keeping attorney organized, about her hourly rate, and number of hours expended in preparation of case supported award of costs for paralegal). Explicit or implicit in all of these cases is a requirement that the claimant put forth some evidence to show that the fees being sought are usual and customary.

Here, it appears that the United Space's motion in limine granted by the district court, which precluded discussion by either party as to the reasonableness or necessity of those attorney's fees

relating to the Hi-Shear action, was extended to the fees relating to the instant coverage action. Thus, the only evidence United Space proffered as to the attorney's fees for the coverage action were copies of legal bills showing how much it had paid, and testimony about how much it expected to pay to complete the action. However, this evidence did not include detailed billing summaries showing the type of legal work performed, the attorney's involved, the hourly rates charged by all attorneys and support staff involved in the case, and the hours spent for each particular task. There was no evidence offered at all, either in the form of testimony or documentation, that the attorney's fees charged for the coverage action here were usual and customary. Thus, we find that United Space did not meet the initial threshold of showing that the fees requested were usual and customary in order to be entitled to the presumption of reasonableness under section 38.003.

We reject AHAC's argument that United Space was required to offer the testimony of a designated expert to support the attorney's fees awarded for the coverage action. Section 38.003 clearly provides a presumption of reasonableness to a claimant who has met the initial threshold of showing that the fees requested are usual and customary. The requirement of a designated expert goes to the reasonableness of the fees requested. If a claimant entitled to damages pursuant to section 38.001 were required to offer the testimony of a designated expert as to reasonableness, then the reasonableness presumption under section 38.003 would be meaningless.

We also find that because the issue of the amount of attorney's fees to be awarded here was placed before a jury, the possibility that the district court could have taken judicial notice that United Space met such threshold is precluded. See e.g., Long Trusts v. Atlantic Richfield Co., 893 S.W.2d 686, 687-88 (Tex. App.-Texarkana 1995, reh'g overruled) (In a jury case where the parties agree to submit the amount of attorney's fees to the court, the court may take judicial notice of the usual and

16

customary fees and the contents of the case file and set the fees based on such judicial notice without receiving further evidence); Carlyle Real Estate Limited Partnerhsip-X v. Liebman, 782 S.W.2d 230, 233 (Tex. App.-Houston [1st Dist.] 1989) (Section 38 provides that in a proceeding before the court, the court may take judicial notice of the usual and customary attorney's fees and the contents of the case file without receiving further evidence).

C.      Segregation of attorney's fees

Finally, AHAC correctly notes that the issue of segregation of the attorney's fees sought by United Space was never addressed at trial. However, our review of the record reveals that AHAC failed to object to the lack of segregation of fees by either objecting to the jury instructions given which did not require segregation, or by offering jury instructions of its own. The Texas Supreme Court has clearly stated that when a party against whom attorney's fees are sought does not object to jury instructions which fail to segregate attorney's fees, or does not object to the fact that attorney's fees are not segregated as to specific claims, then that party has waived such objection, and the error is not preserved for appeal. Green Intern., Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (citing Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988)).

However, because we are remanding the attorney's fees awarded as damages for a determination of reasonableness and necessity, and those attorney's fees awarded for the coverage action for a determination as to whether they are usual and customary, we consider whether upon remand, the issue of segregation must nonetheless be addressed.

The Texas Supreme Court in Stewart Title Guaranty Co. v. Sterling held that the award of attorney's fees based upon evidence of unsegregated fees requires a remand. 822 S.W.2d 1, 11 (Tex. 1992). The court in that case, as well other Texas courts in other cases, have stated that segregation

17

is an essential component of reasonableness that a party must show in a request for attorney's fees. See e.g., Id. at 10 (Plaintiff requesting attorney's fees from multiple defendants' must segregate the fees so that defendants are not charged fees for which they are not responsible.); Ralston Oil & Gas Co. v. Gensco, Inc., 706 F.2d 685, 697 (5th Cir. 1983) ("Those causes for which no recovery for attorney's fees may be had must be segregated and excluded from consideration in determining reasonable attorney's fees."). However, this court has held that Texas law does not require segregation of attorney's fees when the services rendered relate to: (1) multiple claims arising out of the same facts or transaction, and (2) the prosecution or defense entails proof or denial of the same facts. See DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 434 (5th Cir. 2003) (citing Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37, 41 (Tex. App. Amarillo 1997, writ denied); Coffel v. Stryker Corp., 284 F.3d 625, 641 (5th Cir. 2002) (citing Stewart Title Guaranty Co., 941 S.W.2d at 73).

Because the issue of segregation of attorney's fees was not adequately addressed, we instruct the district court to require United Space to either show segregated fees, or establish why it would not be required to do so as outlined above, for those attorney's fees awarded as damages in the Hi-Shear action. This is proper because our remand is based on the failure to address reasonableness and not segregation alone, which would have precluded reversal and remand due to AHAC's failure to object at trial. As for those attorney's fees awarded in the coverage action, United Space need only show that the fees it requested are usual and customary to get the presumption of reasonableness under section 38.003. If it succeeds in doing so, the burden will then shift to AHAC to rebut that presumption, which may include the issue of segregation.

## CONCLUSION

We AFFIRM the district court's denial of AHAC's motion for summary judgment which

sought a declaratory judgment that it did not owe United Space a duty to defend under the Policy, as well as the district court's *sua sponte* grant of summary judgment that AHAC does owe such a duty. We also AFFIRM the district court's denial of AHAC's judgment as a matter of law motion seeking a reversal of the jury's verdict that it breached its duty to defend under the Policy. We REVERSE the district court's denial of AHAC's judgment as a matter of law motion which sought reversal of the jury's award of attorney's fees to United Space, both as damages for the fees incurred in the Hi-Shear action and the fees incurred in coverage action, and REMAND for redetermination of such fees consistent with this opinion.