United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 3, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-30713
Summary Calendar

_____

GANGI SEAFOOD, INC.,

Plaintiff-Appellant,

versus

ADT SECURITY SERVICES, INC., ET AL.,

Defendants,

ADT SECURITY SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(No. 2:00-CV-3715 S)

_____

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Before the Court is an appeal from the district court's order entering summary

judgment in favor of ADT Security Services, Inc. ("ADT"). Because we agree with the

district court's careful and well-reasoned opinion, we affirm the order.

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth
in 5th Cir. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

ADT contracted with Reuther's Seafood Company in March 1995 to provide fire alarm services to Reuther's facility at 600 Mazant Street in New Orleans. Under the terms of the contract, ADT agreed to monitor the fire alarm system and to notify the New Orleans Fire Department when the alarm was triggered. While the contract between Reuther's and ADT called for monthly payments, Reuther's prepaid until July 1999.

Reuther's entered into an agreement with Appellant Gangi Seafood, Inc. for the sale of the 600 Mazant Street facility. In October or November 1998, ADT representative Edward Jefferson met with Reuther's President and CEO Clarence "Bubby" Reuther and Gangi Seafood President Michael Gangi to discuss the fire alarm system. They agreed that the Reuther's contract would be assigned to Gangi. ADT undertook to change the alarm codes so that only Gangi could access the alarm system. The parties are in agreement that Jefferson said to Gangi: "Welcome to the ADT family" and offered to discuss with his superiors at ADT offering Gangi a contract with different terms than the Reuther's contract. Gangi asserts that Jefferson promised to contact Gangi prior to expiration of the contract to negotiate a renewal contract.

Gangi Seafood commenced operations at the 600 Mazant facility in October 1998 and purchased the facility from Reuther's in January 1999. No new contract was thereafter executed between Gangi and ADT.

When the prepaid term of the ADT-Reuther's contract was about to expire, ADT sent Reuther a letter reminding him to pay the annual premium to renew the contract.

2

Reuther faxed ADT a letter informing them that he no longer owned the 600 Mazant Street facility. ADT did not provide notice to Gangi that the contract was about to expire.

ADT's monitoring of the fire alarm ceased in July 1999. In December 1999, a fire destroyed the 600 Mazant Street facility. Gangi sued ADT, alleging that if ADT had been monitoring the fire alarm, the damage would not have occurred or would have been less severe. On July 2, 2004, the district court granted ADT's motion for summary judgment, dismissing Gangi's suit. Gangi timely appealed.

## II. STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court." Am. Home Assur. Co. v. United Space Alliance, LLC, 378 F.3d 482, 486 (5th Cir. 2004). Summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).

## III. DISCUSSION

Gangi raises three claims against ADT: negligence, detrimental reliance, and breach of contract. The district court correctly issued summary judgment on each.

A. Negligence

The district court properly identified and applied the test for determining liability for negligence under Louisiana law:

(1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
(5) Were actual damages sustained?

Bursztajn v. United States, 367 F.3d 485, 489 (5th Cir. 2004). Whether a duty is owed is "a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'" Id. (citation omitted). We base our decision on whether a duty exists on "'various moral, social, and economic factors.'" Id. (citations omitted).

We agree with the district court that ADT had no duty to notify Gangi of the termination of the monitoring services. The evidence offered by Gangi to support its theory that ADT assumed such a duty — Jefferson's statements at the 1998 meeting — simply reflects courtesy and marketing efforts, rather than the assumption of a duty for purposes of a tort action.

B. Detrimental Reliance

Under Article 1967 of the Louisiana Civil Code, imposition of detrimental reliance liability requires a plaintiff to show three elements: (1) that the defendant made a promise, (2) that the plaintiff's reliance on the representation was reasonable, and (3) that the plaintiff's reliance caused a change in position to its detriment. See Industrias Magromer Cueros Y Pieles S.A. v. La. Bayou Furs, Inc., 293 F.3d 912, 921 (5th Cir. 2002) (citing LA. CIV. CODE ANN. art. 1967 (West 1987)). Gangi maintains that Jefferson promised that ADT

4

would contact Gangi prior to termination of the contract he had assumed from Reuther's. Gangi argues that it reasonably relied on this promise, believing that until it was contacted by ADT, Gangi would continue to receive all the protection provided under the contract.

We hold to the contrary. No reasonable person would rely solely on Jefferson's statements as a basis for assuming that the alarm services would continue indefinitely, without payment, until ADT contacted Gangi. Gangi's theory of detrimental reliance could succeed only if ADT had promised to continue providing Gangi alarm services indefinitely, until Gangi decided whether to enter a new contract with ADT. Gangi offers no evidence of such a promise.

C. Breach of Contract

Gangi argues that as an assignee and/or subrogee of the Reuther's contract, it was entitled to all of the benefits Reuther's received under the contract. Gangi claims that one such benefit was to be notified when the contract neared expiration and to be provided written notice prior to termination of services. ADT argues that Gangi has failed to establish that it was entitled to the benefits of the Reuther's contract. Even assuming that Gangi is entitled to the contract's benefits, Gangi has no breach of contract claim. Gangi admits that the contract itself did not require ADT to give such notice, but argues that ADT had adopted this practice as part of its standard procedure. Gangi offers no legal authority, however, to support the meritless proposition that a mere standard practice amounts to a contractual duty even when it not mentioned in the contract. ADT had the right to terminate services for nonpayment without notice.

5

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.